G. R. LEVISAY et al., Appellants,

v.

COMANCHE INDEPENDENT SCHOOL
DISTRICT et al., Appellees.

No. 4529.

Court of Civil Appeals of Texas,
Eastland.

Oct. 20, 1972.

Rehearing Denied Nov. 17, 1972.

Johnson, Slagle & Bell (L. B. Slagle), Brownwood, for appellants.

C. O. McMillan, Stephenville, for appellees.

WALTER, Justice.

Twenty taxpayers of the Comanche Independent School District sought to enjoin the District from certifying the tax rolls for the year 1970. A temporary injunction was granted which was later modified to the extent that the District was not restrained from proceeding with the levy, assessment and collection of taxes and preparation of the tax rolls insofar as persons not specifically named as plaintiffs in this suit were concerned. In a non-jury trial the court refused injunctive relief and the taxpayers have appealed.

"The Constitution and laws of this State require taxing authorities to assess all property on the basis of its reasonable cash market value and require that all taxes be equal and uniform. Art. VIII, § 1, Constitution, Vernon's Ann.St.; Art. 7174, Vernon's Ann.Civ.St. It has been recognized that exact uniformity and equality of taxations is an unattainable ideal. Whelan v. State, supra. Nevertheless, the Board of Equalization is charged by law and by oath with the ultimate responsibility of working to such an ideal. Arts. 7211–7212, 7215, Vernon's Ann.Civ.St." Briscoe Ranches, Inc. v. Eagle Pass Independent School District, 439 S.W.2d 118 (Tex.Civ.App.-San Antonio 1969, writ ref. N.R.E.).

The appellants contend that the meeting of the Board of Equalization of the Comanche Independent School District was held in controvention of the open meeting laws. Article 6252–17, Vernon's Texas Civil Statutes. The court's conclusion of law that the meeting of the Board of Equalization for the school district was an open meeting and sufficiently complied with the requirements of the open meeting laws is supported by the evidence.

The appellants' point that there was no valid assessment by the assessor-collector of the school district as required by law cannot be sustained. Hollis Auvenshine, assessor and collector of taxes for the Comanche Independent School District, testified substantially as follows:

I started accepting renditions from the taxpayers some time after October 1, 1969, and continued to accept renditions until the first of May, 1970. When asked the hypothetical question "if I came into your office to render my property for taxation, just tell me what you do." Mr. Auvenshine replied "Well, sir, we have the forms to fill out, and if he has not rendered with us before why then, of course, we have to take a description of his property, and that I have not put any assessment on, myself, because that has always been referred to the Board. But if he has been a taxpayer and on the roll in '69, why that—we get this rendition sheet printed up in '69 and he fills out the back of it with his personal property, and if he hasn't sold any property, his real estate, real property, it will be the same as listed on the front of the rendition sheet from last year."

When asked the hypothetical question "if a person purchased 100 acres from Joe Smith and it had been on the tax rolls for $4,000 how did he handle the assessment", Mr. Auvenshine replied by giving the following answers to the following questions:

"A No, sir, what I would do is to go back to the man that you bought it from and his rendition of it, if you bought his full 100 acres, and he had it on the roll at $4,000.00, I would write $4,000.00 value in

there, what it was on the rolls at that time, yes, sir.

Q   In other words you just transfer the value that Joe Smith had from Joe Smith to my rendition sheet?

A   Right, sir.

Q   Now, when did you—did you go to the equalization board?

A   Yes, sir, I met with the equalization board.

Q   Did you meet with them all the time that they were in session?

A   Yes, sir.

Q   Continuously?

A   Yes, sir.

Q   Now, Mr. Auvenshine, did you take that list of personal property with you?

A   It was given to them, yes, sir.

Q   Now when each taxpayer came in there, did you furnish the equalization board with a list of the rendition slip that showed the personal property and the real property on it?

A   Yes, sir, they had that rendition sheet at their hearing."

■   Article 1050, V.A.C.S. places upon the board of equalization the duty of finding the value of the property and correcting any errors that appear on the assessor's lists or books.   Texas Education Code, Subchapter F 23.91 and 29.93 requires the assessor and collector of taxes to assess the taxable property within the district.   We find that appellants have not discharged their burden of showing that the court erred in finding that the assessor and collector of taxes for the district assessed such property.

■   We find no merit in appellants' contention that their constitutional rights have been violated.

■   Appellants' no evidence point is overruled because there is evidence of probative force to support the judgment.

We have considered the entire record and find that the judgment is not contrary to the preponderance of the evidence.

■   Appellants say that the Equalization Board did not take into consideration fair market value as required by law. Some of the original plaintiffs testified during the trial as to fair market value and about the assessed valuation of their property.   Their testimony fails to show injury.

■   Appellant allege in their petition that the plan or scheme of taxation of the district is arbitrary, discriminatory and illegal because it omitted from the tax rolls a large volume of tax property subject to taxation and that such plan or scheme of taxation "works to plaintiffs substantial injury by way of excess of taxes on plaintiffs real and personal property."   After finding that the district had omitted from the tax rolls some personal property subject to taxation, the court made the following finding:

"There was no evidence showing the amount and ownership of any of the items of non-exempt household goods, jewelry, peanut allotments, milk bases, bank accounts, savings accounts, vendor's lien notes, deed of trust notes, certificates of deposit, corporate stocks, bonds and securities located in the Comanche Independent School District or owned by persons residing within the Comanche Independent School District."   We hold that such finding is supported by the record and appellants have not discharged their burden of showing injury.

We have considered all of appellants' points and find no merit in them.   They are overruled.

The judgment is affirmed.