Robert L. PORTH, et al., Appellants,

v.

Herbert L. MORGAN, et al., Appellees.

No. 1462.

Court of Appeals of Texas,
Tyler.

Sept. 24, 1981.

Rehearing Denied Oct. 22, 1981.

J. B. Sallas, Wm. R. Pemberton, Sallas, Meriwether & Pemberton, Crockett, for appellants.

Herbert L. Morgan, Terry M. Thorn, Crockett, Parsons, Thorn & Wells, Palestine, Donald J. Gordon, Carter, Gordon & von Doenhoff, Crockett, for appellees.

McKAY, Justice.

This is a declaratory judgment suit to determine two questions. The issues presented are whether the Commissioners Court of Houston County, solely by its own order, is empowered to increase the membership of the Board of Directors of the Houston County Hospital Authority from seven to nine members and to appoint a majority of those members.

Appellant Porth sued the County Judge and the County Commissioners of Houston County (Commissioners Court), alleging that the Commissioners Court, pursuant to Article 4494r, Tex.Rev.Civ.Stat.Ann.,[1] created the Houston County Hospital Authority (Hospital Authority) on October 26, 1964, and in so doing provided "that the Houston County Hospital Authority shall be governed by a Board of Directors consisting of seven members."

Porth further alleged that on June 24, 1968, the Board of Directors (Board) of the Hospital Authority adopted a resolution authorizing the issuance of First Mortgage Revenue Bonds and the execution and delivery of an Indenture of Mortgage and Deed of Trust to secure these bonds. Porth pled that the Trust Indenture was to be effective July 1, 1967 and that it provided in Section 12.06:

> In accordance with the act, it is hereby provided that four members (being a majority) of the Board of Directors of the Authority shall be selected as herein provided. Such four members shall be appointed for terms of two years each by a majority vote of the Board of Directors.....[2]

---

1. All references to articles are to Tex.Rev.Civ. Stats.Ann.

2. In Porth's pleading, the parenthesis closed after the word "Authority". We quote from the Trust Indenture.

Porth further alleged that on January 28, 1980, the Commissioners Court passed an order increasing the size of the Board from seven to nine members, and thereafter appointed two new members.

The questions posed by Porth are (1) whether the Commissioners Court could increase the size of the Board of the Hospital Authority solely on its own order and (2) whether the Commissioners Court can solely by its own action appoint a majority of the members of the Board of the Hospital Authority.

The Commissioners Court answered by a plea in abatement, a plea in bar that question (2) was moot and nonjusticiable, and asserted that Porth lacks standing to sue. The Commissioners Court also sought a declaratory judgment that it has and had authority under the statute and the Trust Indenture to appoint more than three members of the Board and can legally, solely by its own action, appoint a majority of the Board. Four members of the Board, Currie, Von Doenhoff, Dorsey and Jones, intervened with pleas in bar that question (2) was moot because of action of the Board pursuant to a resolution adopted at the February 1, 1980, meeting, that Porth lacks standing and has no justiciable interest in the issues, and further pleading that the Commissioners Court is empowered to increase the size of the Board of the Hospital Authority. These intervenors filed a counter-claim asking the court to declare void the Board's action in electing Porth as a hospital director, to declare Porth's office vacant, and for a declaratory judgment.

Other members of the Board and a number of doctors who were members of the medical staff of the hospital intervened.

The trial court declared in its judgment that the Commissioners Court can increase the size of the Board of the Hospital Authority from seven to eleven members solely on its own orders; that the governing body of the county can, solely by its own action, appoint a majority of the members of the hospital board; and that four members of the hospital board are to be appointed by the hospital board and the remaining members appointed by the Commissioners Court regardless of the number of directors.

The trial court further declared that J. B. Sallas is a Class One member, that the position held by Porth is a Class 2 membership; that Adrian A. Davis is a Class 2 member; that the other Class 1 membership has expired, and that remaining members of the Board draw lots for that position; that the term of office for Class 1 members expires October 26, 1980; that the term for Class 2 members expires October 16, 1981; that the office of director of the hospital board held by Porth is declared to be vacant as of July 11, 1980, and that Porth is removed as a director effective July 11, 1980.

Plaintiff Porth and counter-defendants Sallas, Driskell and Davis appeal.

The trial court made extensive findings of fact: (1) On October 26, 1964, the Commissioners Court created the Hospital Authority by order pursuant to authority granted in Article 4494r; (2) on June 24, 1968, the hospital board adopted a resolution authorizing the issuance of First Mortgage Revenue Bonds, and the execution and delivery of an Indenture of Mortgage and Deed of Trust to secure these bonds; (3) pursuant to Section 12.06 of the Trust Indenture the members of the Board of the Hospital Authority designated four members to serve as appointees of the Board: J. B. Sallas, George McKinney, Jim Brady Waller, and Adrian A. Davis; (4) pursuant to Section 12.06 of the Trust Indenture, the four members designated by the hospital board to serve on the Board drew lots to determine their class designations—Sallas and McKinney drew lots as Class 1 members and Waller and Davis drew lots as Class 2 members; (5) Sallas continues to serve as a Class 1 member; that the position held by Porth is a Class 2 membership; that Davis continues to serve as a Class 2 member; and that the other Class 1 membership on the Board has expired and no person has been elected to fill that vacancy; (6) the term of office for Class 1 members on the hospital board expires on October 26, 1980; (7) the term of office for Class 2

members on the Board expires on October 16, 1981; (8) on December 10, 1979, the Commissioners Court, by order, appointed Harold Metzler to serve on the Hospital Authority Board until October 26, 1980, Charlotte Jones to serve until October 26, 1981, and Bobby R. Currie to serve until October 26, 1982, or until their respective successors have been appointed and qualified; (9) the Commissioners Court enlarged the membership of the Hospital Authority Board from seven to nine members by order adopted and approved on January 28, 1980; (10) the Commissioners Court, by order on January 28, 1980, appointed R. C. Von Doenhoff and E. S. Dorsey as initial appointees of the Court to fill the two additional places created on the Hospital Authority Board; (11) the meeting of the Hospital Authority Board held on January 21, 1980, at 5:00 p. m. was conducted as an executive session and closed to the public; (12) that at the meeting of the hospital board held on January 21, 1980, at 5:00 p. m., Porth was elected as a member of the Board; (13) the election of a director to the Hospital Authority Board was not stated as an item of business on the agenda in the notice posted for the January 21, 1980, meeting of the hospital board; (14) the meeting of the hospital board held on February 1, 1980, at 5:00 p. m. was conducted as an open meeting; (15) the election of a director to the hospital board was not stated as an item of business on the agenda in the notice posted for the February 1, 1980, meeting of the hospital board; (16) there are no provisions in the resolutions of the hospital board authorizing the issuance of bonds pertaining to the increase or decrease in the size of the board; (17) Section 12.06 of the original Trust Indenture of the Hospital Authority is the only place in either Trust Indenture of the Hospital Authority that makes any mention of the election of directors on the Board of the Hospital Authority, and Section 12.06 does not prohibit the increase or decrease in the size of the Hospital Authority Board.

Additional finding 1 found that the election of officers of the Hospital Authority Board was stated as an item of business on the agenda in the notice posted for the February 1, 1980, meeting of the Hospital Authority Board, and additional finding 2 found that at the meeting of the hospital board on February 1, 1980, Robert L. Porth was unanimously elected vice-chairman of the Board.

Conclusions of law were made that (1) the governing body of Houston County can increase the size of the Hospital Authority Board from seven to nine solely by its own order; (2) and it can, solely by its own action, appoint a majority of the members of the Hospital Authority Board, four members of the Hospital Authority Board are to be appointed by the Hospital Authority Board, and the remaining members of the Board shall be appointed by the Commissioners Court regardless of the number of directors on the Hospital Authority Board; (3) the court's determination of the above two issues is based on Section 4(a) of Article 4494r and Section 12.06 of the Trust Indenture; (4) the election of Robert L. Porth to membership on the Hospital Authority Board at the board meeting on January 21, 1980, violated Article 6252–17, the Texas Open Meetings Act, because (a) such action was a final action, decision, and vote regarding a matter considered in a closed meeting in violation of Article 6252–17, Section 2(1) and (b) such action was taken without the action being stated on the agenda in the notice posted for such meeting in violation of Article 6252–17, Section 3A(a); (5) the action of the Board at a meeting on February 1, 1980, in electing Robert L. Porth as vice-chairman of the Board, was not sufficient as a ratification of his election to the Board as a director of the hospital board. The agenda in the notice posted for the February 1, 1980 meeting of the Board did not include as an item of business the election of a new director or the ratification by the Board of the previous election of a director to the Board at a previous meeting held in non-compliance with Article 6252–17, any action by the Board at the February 1, 1980 meeting attempting to ratify the election of Porth to the Board was in noncompliance with and

in violation of Article 6252-17, Section 3A(a), and any attempted ratification was ineffective; (6) as a result of the violations of Article 6252-17 the election of Porth as a member of the Board was in contravention of statute thereby authorizing his removal as a director and a declaration that his office is vacant pursuant to Article 6252-17.

■ Appellants first complain the trial court erred in holding that the governing body of Houston County can, solely by its own action, appoint a majority of the members of the Board of the Hospital Authority because such increase is prohibited by the Indenture of Mortgage and Deed of Trust dated July 1, 1967, and because the Trust Indenture effectively requires that a majority of the Board of the Hospital Authority be appointed by the Board of Directors. We do not agree with these contentions.

Article 4494r, Section 4(a) provides in part:

> The Authority shall be governed by a Board of Directors consisting of not less than seven (7) nor more than eleven (11) members *to be determined at the time of creating the Authority. Unless otherwise provided in the resolution authorizing the issuance of bonds or the Trust Indenture securing them, the number of Directors may be increased or decreased from time to time by amendment to the order creating the Authority adopted by the Governing Body of the County,* but no decrease in number shall have the effect of shortening the term of any incumbent Director. Except as hereinafter in this Section provided, the first Directors shall be appointed by the Governing Body of the County, and they shall serve until their successors are appointed as hereinafter provided. *When the Authority issues its revenue bonds the resolution authorizing the issuance of the bonds on the Trust Indenture securing them may prescribe the method of selecting and the term of office of a majority of the members of the Board.* (Emphasis added).

By order dated October 26, 1964, the Commissioners Court, under the authority of the Hospital Authority Act, created the Hospital Authority and fixed the number of Directors at seven members. The seven Directors were named and appointed in the order.

The Commissioners Court, on December 10, 1979, adopted an order again providing that the Hospital Authority Board "shall consist of seven (7) members," and provided further that the hospital board appoint four (4) members of the hospital board and the County Commissioners appoint three (3) members.

After reciting that the Commissioners Court previously created the Hospital Authority and appointed a seven (7) member Board, and later reappointed the same Board, and further reciting that the Trust Indenture securing the bonds of the Hospital Authority "provided that four members (a majority) of the Board of Directors of said Authority should be appointed by majority vote of the Board of Directors," the Commissioners Court on January 28, 1980, "passed, approved and adopted" an order "that the Board of Directors of Houston County Hospital Authority shall consist of nine (9) members," and "that this Court shall appoint the two (2) initial appointees of such Board as provided for herein." By the order enlarging the Hospital Authority Board to nine (9) members, two new members were appointed by the Commissioners Court. The appointment of the two additional members resulted in the Commissioners Court appointing a majority of the Board of the Hospital Authority.

The language of the Trust Indenture infers that the Board of the Hospital Authority would be seven—"it is hereby provided that *four members (being a majority)* of the Board ... Such *four members* shall be appointed ...." However, there is no language in the Trust Indenture definitely fixing the number at seven nor specifically prohibiting the Commissioners Court from enlarging the Board within statutory bounds. Article 4494r, Section 4(a) provides the number of directors may be increased or decreased by amending the order creating the authority *unless* otherwise provided in the Trust Indenture securing the bonds issued by the authority.

Moreover, Article 4494r, Section 4(a) indicates that the Trust Indenture could have provided without equivocation that the Board would consist of seven members and that this number would not be increased during the life of the trust. Had it contained such a provision the Commissioners Court would have been bound by it and therefore without authority to increase the Board membership.

Appellants cite *State ex rel. Burnet County v. Burnet County Hospital Authority*, 495 S.W.2d 300 (Tex.Civ.App.-Austin 1973, writ ref'd n.r.e.) as authority to support the contention that the Board could not be enlarged by the governing board of the county. The second sentence in Article 4494r, Section 4(a) was not in the statute at the time the *Burnet* case was tried or when the opinion was written. Therefore, *Burnet* is not authoritative in the instant case.

B. H. Estes, an investment banker, testified he was retained by citizens of Houston County to determine the feasibility of building a hospital in the county by the issuance of revenue bonds, and the resolution submitted to the Commissioners Court creating the Hospital Authority and appointing the initial seven members of the Board was prepared by J. B. Sallas and Bobby McCall. McCall is a Dallas bond attorney. If it could be said the language of the Trust Indenture is ambiguous or its intent is unclear then the rule should be applied that the instrument will be construed most strictly against the party who drafted it. 14 Tex. Jur. 3d Contracts § 189 (1981) and cases cited therein.

Appellants' points 1 and 2 are overruled.

Appellants next contend the trial court erred in declaring the office of director held by Porth to be vacant and ordering him removed from the Board. Appellants argue that, even if Porth's election to the Board was invalid, the Hospital Authority Board ratified his election to the Board at a subsequent Board meeting by electing him vice-chairman of the Board. We overrule these contentions.

The trial court found that the Hospital Authority Board meeting on January 21, 1980, was conducted as an executive session closed to the public. At this meeting Porth was elected as a director, but the election of a director was not stated as an item of business on the agenda in the notice posted for that meeting. The trial court concluded that Porth's election to the Board at that meeting violated the Texas Open Meetings Act, Article 6252–17, because the action was a final action, decision, and vote on a matter considered in a closed meeting, and such action was taken without the matter being stated on the agenda in the notice for such meeting.

The trial court further found that the Board meeting on February 1, 1980, was conducted as an open meeting and the election of a director was not stated as an item of business on the agenda in the notice posted for that meeting, but the election of officers of the Board was stated on the agenda. Porth was unanimously elected vice-chairman of the Board at such meeting. The court concluded that the election of Porth as vice-chairman of the Board was not sufficient as ratification of his election to the Board at the January 21st meeting, and any attempt to ratify Porth's election violated the statute. The trial court further concluded that Porth should be removed from the Board.

Article 6252–17, Section 3A(a) (1977) provides in part:

> Written notice of the date, hour, place, and subject of each meeting held by a governmental body shall be given before the meeting as prescribed by this section, and any action taken by a governmental body at a meeting on a subject which was not stated on the agenda in the notice posted for such meeting is voidable.

Appellants assert that *Stirman v. City of Tyler*, 443 S.W.2d 354 (Tex.Civ. App.-Tyler 1969, writ ref'd n.r.e.), and *Fausett v. King*, 470 S.W.2d 770 (Tex.Civ.App.-El Paso 1971, no writ) support their position that the election of Porth as vice-chairman ratified his appointment as a Board member. We disagree. These cases hold that a municipal body may ratify only what it

could have lawfully authorized initially, and that a prerequisite to lawful authorization is the power to so act. Having failed to comply with Article 6252–17, Section 3A(a) by posting written notice of the date, hour, place and subject matter (election of director) for the January 21, 1980, meeting, the Board could not have lawfully elected Porth as a director. What it could not lawfully have done, it could not ratify at the February 1, 1980, meeting by electing Porth vice-chairman.

The court in *Hall v. Thomas*, 474 S.W.2d 276, 277 (Tex.Civ.App.-Texarkana 1971, writ dism'd) recognized that Article 6252–17 was mandatory. *Lipscomb Ind. School Dist. v. County School Trustees*, 498 S.W.2d 364, 366 (Tex.Civ.App.-Amarillo 1973, writ ref'd n.r.e.) held that the "terms of Art. 6252–17 are mandatory so as to require at least substantial compliance with its provisions in order to uphold proceedings to which the statute is applicable."

*Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex.1975), held the notice of the meeting of the board of the Lower Colorado River Authority did not comply with Article 6252–17, Section 3A, "and the trial court properly held invalid the action of the Board at that meeting purporting to increase rates." The court then approved the holding in *Toyah Independent School Dist. v. Pecos-Barstow Independent School Dist.*, 466 S.W.2d 377 (Tex. Civ.App.-San Antonio 1971, no writ), and further held that the attempted ratification of the action taken in violation of the open meeting law was ineffective. *Lower Colo. River Auth., supra* at 646.

In points 5 through 8 appellants complain of the trial court's refusal to strike from the intervenor's pleadings the issues of Porth's status as a Board member and the status, classes and terms of directorships on the Board. Appellants further complain the trial court erred in overruling special exceptions to the Commissioners Court's first amended answer which challenged the membership of Porth on the Board as well as the status, classes and terms of directorship on the Board. They argue that an

intervenor takes the case as he finds it and is bound by the record as it exists at the time he enters the case.

Article 2524–1, Uniform Declaratory Judgments Act, provides in Section 1 that "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed," and states in Section 11 that "When declaratory relief is sought, *all persons shall be made parties who have or claim any interest which would be affected by the declaration*, and no declaration shall prejudice the rights of persons not parties to the proceeding." (Emphasis added). Section 12 provides "This Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; *and is to be liberally construed and administered*." (Emphasis added).

The action for declaratory judgment "is an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal and should not be hedged about by technicalities." *Guilliams v. Koonsman*, 154 Tex. 401, 279 S.W.2d 579, 583, Annot. 57 A.L.R.2d 97 (1955); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713, Annot. 172 A.L.R. 937 (1945). Cases cited by appellants that an intervenor is bound by the record as it exists when they came into the case were not Declaratory Judgment cases and the opinions were written before the enactment of our Uniform Declaratory Judgments Act. The act is broad in scope and should be liberally construed. *Airport Coach Service, Inc. v. City of Fort Worth*, 518 S.W.2d 566, 571 (Tex.Civ.App.-Tyler 1975, writ ref'd n.r. e.).

 It is our view that the language of Section 11 that all persons who have or claim any interest which would be affected shall be made parties affords the trial court the discretionary authority to permit such parties to intervene even though their pleadings raise additional but related issues. The above language of Section 11 is manda-

tory. All members of the Board probably should have been made parties by Porth's petition, but in our view it was not error for the trial court to permit members of the Board, and later others, to intervene so that all interested parties would be before the court and a valid judgment could be rendered or declared. *Adamson v. Blackmar*, 546 S.W.2d 698, 701 (Tex.Civ.App-Austin 1977, no writ). We hold the trial court did not abuse its discretion.

■ If such action by the trial court in permitting the filing of an intervention by other members of the Board could be said to be error, it was harmless error. Tex.R. Civ.P. 434.

■ Lastly, appellants complain in points 9 and 10 of the trial court's action in declaring the Class 1 membership held by Reginald Driskell to be vacant, and in ordering the Board to fill such position. We are advised by appellee's brief that since the trial of the case Reginald Driskell has resigned from the Board, and that his resignation occurred at a meeting of the Board held on September 29, 1980. There being nothing in the record to the contrary, any issue raised in points 9 and 10 is moot.

Judgment of the trial court is affirmed.